J. Hector Paquin
            vs.                    Eq. No. 8552
City of Woonsocket, et al.

### March 1, 1928.

TANNER, P. J. This is a bill in equity in which the complainant, acting individually and as Mayor of the City of Woonsocket, seeks to restrain the respondents, some of whom are aldermen of the City of Woonsocket, one of whom is city auditor, another of whom is city treasurer, and the last of whom is Eleanor I. Letendre, doing business as the Hamlet Trucking Company, from prosecuting a contract to remove ashes and garbage from the City of Woonsocket, said contract having been assented to and entered into by the Board of Aldermen of said City acting as the Board of Health, and said contract having been made with the respondent, the Hamlet Trucking Company.

The contract for the collecting and disposal of rubbish and ashes was awarded the Hamlet Trucking Company for five years at the price of $20,000 per year. the contract for the collecting and disposal of garbage was awarded to the said Hamlet Trucking Company for the term of five years at the price of $20,000 per year.

The bill alleges that although required by the advertisement, said Hamlet Trucking Company did not give bond for the faithful performance of said contracts.

The bill also alleges that bids lower than those of the Hamlet Trucking Company were made by responsible persons and that said Board of Aldermen had abused its discretion, if any it had, in awarding said contracts.

The bill further alleges that in awarding said contracts the Board of Aldermen acted contrary to the provisions of certain ordinances of the City of Woonsocket, which ordinances are made exhibits to the bill.

The matter is heard upon demurrer to the bill.

The first ground of demurrer is that the Board of Aldermen had power, acting as a board of health, according to the statutes of the State, to make such rules and regulations not repugnant to, or as they shall judge proper for the preservation of the health of the inhabitants thereof in prevention and abatement of nuisances and the promotion of cleanliness; that in pursuance of such power, the said board of health had the right to make contracts binding upon the city for such amounts and for such length of time as in their discretion seemed best.

The respondents have cited cases which in general terms sustain the claim that a board of health thus appointed has power to make such contracts as are necessary to the exercise of its duties. It may be observed as to these cases that the contracts made were a granting of franchises upon the payment of money to the cities, and not on contracts where the city was called upon to pay money for services. But if the board of health can make such contracts binding upon the city, it seems to us that they can only make them in accordance with the requirements of the city ordinances for the expenditure of money. By Sec. 8, Clause 1, of the city charter of Woonsocket, "the city council may make ordinances, rules and by-laws for the government of the city, *the management of its prudential affairs*, and for the good order of its people", etc.

See also Article 8, Clauses 2 and 4, City Charter of Woonsocket.

The State, therefore, which delegated authority to the Board of Health to make rules and regulations has also delegated to the city the power to make ordinances for the management of its prudential affairs, including the method of and restrictions upon the expenditure of the city's money. Such or-

dinances regulating the expenditure of the city's money may, therefore, we think, be fairly considered as a limitation upon the powers of the board given by statute to make rules and regulations which will require the expenditure of the city's money. If the Legislature in giving the Board of Health such power had intended to make them independent of the city ordinances in the expenditure of money, we might fairly expect that they would have said so expressly.

Sec. 2, Chapter 3 of the Revised Ordinances of the City of Woonsocket, requires:

"In every financial year the specific appropriations for the several objects enumerated in the ordinance or resolution making appropriations for each year, shall be deemed the entire amount to be expended during such financial year by the several committees having charge of the respective appropriations and after the passage of such ordinance or resolution no expenditures shall be authorized for any object unless there be sufficient money in the treasury unappropriated to meet such expenditures, unless provisions for the payment thereof shall be made by transfer from some of the appropriations already made, or by directing the city treasurer to borrow the money required therefor".

Sec. 3 of said Chapter:

"Whenever in any financial year necessity shall require in any department of the city government the expenditure of any sum of money in excess of the appropriation made therefor the committee of the city council authorized to expend said appropriation shall present to the city council a detailed statement, written or printed, of the reasons for further expenditures and the objects for which such expenditures are required, and the amount that will be required therefor and no new contract shall be made nor any such additional expenditure authorized unless by vote of the city council making full provisions for the payment thereof; and no debt shall be created, nor shall any transfer be made from one appropriation to another on account of such additional expenditure, until such detailed statement shall have been presented to the city council and approved by them".

It is true that these two sections refer to the several committees having charge of the respective appropriations and the committee of the city council authorized to expand said appropriation, but while the authority of the board of aldermen to act as a board of health is derived from the statute, we think that so far as it expends the money of the city, it may be considered as a committee of the city council which makes the appropriation and that the board of aldermen may be considered as a department of the city government. All the powers of the city government are delegated state powers.

We therefore think that since the contracts made by the Board of Aldermen with the Hamlet Trucking Company were not made in accordance with the ordinances, they must be considered void.

Another ground of demurrer is that the Hamlet Trucking Company, although required by the advertisement of the Board of Aldermen to give bond for the faithful performance of said contract, did not do so.

The respondents argue that the giving of the bond is collateral to the contract and the bond might be furnished later; also that the Board of Aldermen had power to waive the giving of the bond, but if this be so, it seems to us that this is a matter of defence and that it should be alleged by the respon-

dents that the bond was waived or that a proper bond was given.

Demurrer on this ground is therefore overruled.

Lastly, the respondents demur upon the ground that the determination of who was the lowest responsible bidder or the awarding of the contracts to one who was not the lowest bidder was a matter within the discretion of the Board of Aldermen.

While this is true generally speaking, nevertheless the bill alleges in detail the qualifications of several people who bid lower than the Hamlet Trucking Company and alleges a gross abuse of discretion upon the part of the Board of Aldermen.

Demurrer on this ground is therefore overruled.

The demurrer is overruled.

For complainant: James H. Rickard.

For respondent: Eugene L. Jalbert.